**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**PARKERSBURG DIVISION**

CATHY DELEBREAU, et al.,

                Plaintiffs,

v.                                        CIVIL ACTION NO. 6:09-cv-00245

BAYVIEW LOAN SERVICING, LLC

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the court are the defendant's Motion for Summary Judgment [Docket 65] and the plaintiffs' Motion to Certify Class [Docket 68]. For the reasons discussed below, the defendant's Motion for Summary Judgment is **GRANTED** in part; the plaintiffs' Motion to Certify Class is **DENIED** as moot. The court **ORDERS** that judgment be entered for the defendant on Counts One, Two, and Three of the plaintiffs' Complaint. The court declines to exercise supplemental jurisdiction over Count Four of the plaintiffs' Complaint, and, accordingly, **DISMISSES** Count Four without prejudice.

**I.    Background**

This case involves the claims of borrowers against a loan servicing company for the alleged assessment of illegal fees. The named plaintiffs, Cathy and David Delebreau (the "plaintiffs"), seek to assert claims on behalf of both themselves and a class consisting of other West Virginia customers of the defendant Bayview Loan Servicing, LLC ("Bayview"), the servicer of the plaintiffs' home

loan. The plaintiffs allege that Bayview "routinely adds thousands of dollars in illegal fees to consumer accounts and then attempts to collect these sums from West Virginia borrowers by threats of foreclosure." (Pls.' Mem. Supp. Mot. Certify, at 1.) "Specifically," the plaintiffs charge, Bayview "illegally assesses late fees, attorney fees, and other default fees, . . . and misapplies payments resulting in increased principal and interest charges," (*id.*), in violation of the West Virginia Consumer Credit and Protection Act (the "WVCCPA"). *See* W. Va. Code §§ 46A-1-101 – 46A-7-116 (2006).

## II. Facts

The court is alarmed by the factual and procedural morass into which a striking number of recent cases involving the home loan industry fall, and this case is no exception. The record in such cases, although voluminous, often fails to precisely reflect the relationships between the parties and to include the documents (particularly with respect to who owns the loan) that are necessary to evaluate the claims. Such failures are a disservice to both the parties and the court, and, in other circumstances, may undermine a party's claim or defense. Were I forced to delve fully into the merits of this case, I am not certain that it would be possible to put Humpty Dumpty back together again. Nevertheless, I have been able to ascertain the following facts, which are sufficient to resolve the pending motions.

On December 7, 1999, the plaintiffs refinanced the loan on their Wood County, West Virginia home and entered into a loan agreement with Option One Mortgage Corporation ("Option One"). This loan agreement (the "loan") was secured by the plaintiffs' home. The loan had a principal value of $84,500 and a maturity date of January 1, 2030. The plaintiffs executed a note

in the amount of $84,500 payable to Option One and a deed of trust conveying the plaintiffs' home as security for repayment of the loan. The deed of trust contained an acceleration clause which stated:

> If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Agreement, or if Borrower is in default under any other deed of trust or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of the Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option and subject to applicable law, may then or thereafter invoke the power of sale and/or any other remedies or take any other actions permitted by applicable law.

(Def.'s Mot. for Sum. J. Ex. A, at 76.)

Pursuant to an agreement with Option One, Bayview began servicing the plaintiff's loan in March 2004.[1] At that point, the plaintiffs had already made several late payments. Over the next two years, the plaintiffs continued to miss payments and make late payments, and Bayview regularly assessed late fees on the plaintiffs' account. Bayview sent breach letters to the plaintiffs regarding their overdue payments. The plaintiffs assert that these letters threatened late fees, attorney fees, and default fines, all in violation of the WVCCPA.

In June 2006, the plaintiffs entered into a loan modification agreement with Bayview. The loan modification extended the maturity date on the loan to June 1, 2030. The loan modification explicitly stated that, however, "[e]xcept as expressly adjusted by this Agreement, all of the

---

[1] The court has not been provided with this alleged loan servicing agreement, nor its terms. It is unclear what authority, either under state law or the original agreement between the plaintiffs and Option One, allowed Bayview to assess late fees, to modify the loan, and, ultimately, to carry out foreclosure proceedings. The very documents that would provide important clarity about the relationships between the parties, and the legality or lack thereof of certain acts, are missing—either from the record or entirely.

covenants, agreements, stipulations, and conditions in the Note and the Security Instrument remain unmodified and in full force and effect." (Def.'s Mot. for Sum. J. Ex. A, at 83.)

On June 5, 2007, the plaintiffs were behind on their loan payments and Bayview accelerated the loan. On June 7, 2007, Bayview sent the plaintiffs a letter informing them that the loan was overdue and advising the plaintiffs of the amount required to reinstate the loan. On June 19, 2007, the company retained by Bayview to foreclose on the loan sent the plaintiffs a letter informing them that "the creditor to whom the debt is owed has accelerated the debt and has instructed us to foreclose on its Deed of Trust lien" and that "the amount of the debt as of June 5, 2007, is $85,176.20." (Def.'s Mot. for Sum. J. Ex. A, at 86.) The plaintiffs did not make any further payments on the loan and Bayview proceeded with a foreclosure sale.

On July 19, 2007, the date of the scheduled foreclosure sale, the plaintiffs filed a Chapter 13 Bankruptcy Petition with the United States Bankruptcy Court for the Southern District of West Virginia. When Bayview learned of the bankruptcy filing, it ceased further foreclosure proceedings. The plaintiffs' dealings with the bankruptcy court and their extensive filings therein, insofar as these documents have been provided to this court, only further muddle the record. As the bankruptcy proceedings do not directly bear on my holding today, I need not address them in further detail here. Ultimately, on January 17, 2008, the bankruptcy court confirmed the plaintiffs' Amended Chapter 13 Plan, and the plaintiffs began making payments to Bayview in accordance with the plan. The plaintiffs later fell behind on their payments and the plaintiffs' bankruptcy case was dismissed without prejudice on December 3, 2009.

**III.     Procedural History**

On March 18, 2009, while the plaintiffs' bankruptcy case was still pending, the plaintiffs filed the instant suit against Bayview in this court. The plaintiffs' Complaint asserts three class claims "on behalf of all other similarly situated individuals," consisting of "all consumer borrowers in West Virginia whose loans were/are serviced by Bayview anytime after that date five years immediately preceding the filing of this action." (Pls.' Compl. ¶ 21.) Count One asserts claims on behalf of the purported class for assessing illegal late fees in violation of W. Va. Code § 46A-3-113 and § 46A-2-127(d). Count Two asserts claims on behalf of the purported class for illegal application of payments in violation of W. Va. Code §46A-2-115. Count Three asserts claims on behalf of the purported class for assessing illegal default fees in violation of W. Va. Code §§ 46A-2-128(c)-(d) and § 46A-2-127(d). In addition, the plaintiffs' Complaint asserts an individual claim (not on behalf of the purported class) against Bayview for breach of contract and the implied covenant of good faith and fair dealing.

On October 20, 2009, the plaintiffs filed a Motion to Certify Class [Docket 15]. After briefing, this court denied the Motion to Certify on the grounds that the plaintiffs could not meet the numerosity requirement of Rule 23(a)(1) of the Federal Rules of Civil Procedure. The parties have since completed discovery. On August 6, 2010, Bayview filed a Motion for Summary Judgment [Docket 65], and on August 20, 2010, the plaintiffs filed a second Motion to Certify Class [Docket 68]. In the interim, the court discovered that the plaintiffs failed to include a jurisdictional statement in their complaint as required by Rule 8(a)(1) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(a)(1) (stating that a pleading must contain "a short and plain statement of the grounds for the court's jurisdiction"). The jurisdictional issue and the parties' pending motions are now ripe for review.

### IV.  Subject-Matter Jurisdiction[2]

Turning first to the issue of jurisdiction, I **FIND** that this court does have subject-matter jurisdiction over the plaintiffs' purported class action claims in Counts One, Two, and Three of the Complaint. The Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(1)-(11), provides a basis for original subject-matter jurisdiction over these claims. "In CAFA, Congress conferred subject matter jurisdiction on federal courts over class actions in which the amount in controversy exceeds $5 million and in which 'any member of a class of plaintiffs is a citizen of a State different from any defendant.'" *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 702 (4th Cir. 2010) (quoting 28 U.S.C. § 1332(d)(2)(A)). Section 1332(d)(5) limits jurisdiction under CAFA to class actions where "the numbers of members of all proposed plaintiff classes" is 100 or greater. 28 U.S.C. § 1332(d)(5)(B).

The present case meets all of the jurisdictional requirements set forth in CAFA. First, the proposed plaintiff class consists of "all consumer borrowers in West Virginia whose loans were/are serviced by Bayview anytime after that date five years immediately preceding the filing of this action." (Compl. ¶ 21.) Bayview serviced over 300 loans in West Virginia during that period of time, and the purported class contains at least 150 members. Second, the plaintiffs assert that Bayview committed at least 2,662 statutory violations while servicing the loans of the purported class members, and that, given the statutory fine of $4,400 per violation, the amount in controversy

---

[2] The plaintiffs also assert that this court has subject-matter jurisdiction over their claims on the basis of either complete diversity pursuant to 28 U.S.C. § 1332 or supplemental jurisdiction pursuant to 28 U.S.C. § 1367. As explained below, the court finds that original subject-matter jurisdiction exists over the class claims pursuant to CAFA and declines to exercise jurisdiction over the plaintiffs' individual breach of contract claims.

exceeds $11 million. Finally, the plaintiffs are citizens of West Virginia, whereas Bayview is a citizen of Delaware and Florida.³ Accordingly, the parties have demonstrated a basis for this court to exercise subject-matter jurisdiction under 28 U.S.C. § 1332(d) over the plaintiffs' class action claims.

## V. Defendant's Motion for Summary Judgment

### A. Preliminary Matters

Having found that this court has subject-matter jurisdiction over the plaintiffs' class action claims, I turn now to the plaintiffs' pending Motion to Certify Class and Bayview's pending Motion for Summary Judgment. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, a district court should decide whether to certify a class at "an early practicable time after a person sues or is sued as a class." Fed. R. Civ. P. 23(c)(1)(A). As a general rule, "district courts should rule on class certification requests before ruling on a summary judgment motion or otherwise ruling on the merits of the claims." *Muhammad v. Giant Food, Inc.*, 108 Fed. App'x 757, at *3 (4th Cir. 2004) (citing *Nance v. Union Carbide Corp.,* 540 F.2d 718, 723 n.9 (4th Cir. 1976), *vacated in part on other grounds*, 431 U.S. 952 (1997)). "At the class certification phase, the district court must take a 'close look' at the facts relevant to the certification question and, if necessary, make specific findings on the propriety of certification." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir.

---

³ Bayview is a limited liability company organized under the laws of Delaware with its principal place of business in Florida. "[F]or the purposes of determining subject matter jurisdiction under the Class Action Fairness Act of 2005, a limited liability company is an 'unincorporated association' as that term is used in 28 U.S.C. § 1332(d)(10) and therefore is a citizen of the State under whose laws it is organized and the State where it has its principal place of business." *Ferrell*, 591 F.3d at 702 (internal citations omitted).

2006) (internal citations omitted). As the Supreme Court has noted, "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (internal quotations omitted). "[S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.*

In the present case, it is necessary to address Bayview's assertion that the plaintiffs' class claims are barred by the statute of limitations before addressing the certification question. "The class action device, which is 'designed as an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only,' allows named parties to represent absent class members when, *inter alia*, the representative parties' claims are typical of the claims of every class member." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (quoting *Falcon*, 457 U.S. at 155). "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Falcon*, 457 U.S. at 156.

Here, the plaintiffs assert that their claims are "typical" of all similarly situated consumer borrowers in West Virginia. If, however, the plaintiffs' claims are barred by the statute of limitations, then the plaintiffs do not have claims that are "typical of the claims of every class member." *See City of Hialeah v. Rojas*, 311 F.3d 1096, 1101 (11th Cir. 2002) ("To have standing to represent a class, the named plaintiff's claims must be timely filed."). Accordingly, I first consider whether the plaintiffs' class claims are barred by the statute of limitations.

### B. Statute of Limitations for Actions Under the West Virginia Consumer Credit and Protection Act

The plaintiffs assert that Bayview repeatedly violated provisions of the WVCCPA while

servicing the plaintiffs' home loan agreement.[4] Section 46A-5-101 of the West Virginia Code provides consumers with a private right of action against a person who violates the provisions of WVCCPA. Section 46A-5-101 contains two different limitation periods for consumer causes of action and states, in pertinent part:

> With respect to violations arising from consumer credit sales or consumer loans made pursuant to revolving charge accounts or revolving loan accounts, or from sales as defined in article six of this chapter, no action pursuant to this subsection may be brought more than four years after the violations occurred. With respect to violations arising from other consumer credit sales or consumer loans, no action pursuant to this subsection may be brought more than one year after the due date of the last scheduled payment of the agreement.

W. Va. Code § 46A-5-101(1). The applicable limitations period thus depends on the type of underlying consumer transaction giving rise to the cause of action.

The present case arises from a nonrevolving consumer loan that is subject to a one-year limitation period. *See Jones v. Home Loan Inv. F.S.B.,* 718 F. Supp. 2d 728, 740 (S.D. W. Va. 2010). That limitation period thus begins to run on the "due date of the last scheduled payment of the agreement." W. Va. Code § 46A-5-101(1). The issue in this case is a novel one of first impression in West Virginia and this court must ascertain how the West Virginia Supreme Court of Appeals would read the WVCCPA. The issue is this: is the "last scheduled payment of the agreement" the maturity date set forth in the loan agreement or, instead, the date when the entire balance of the loan became due pursuant to an acceleration clause in the loan agreement?

The plaintiffs assert that the statutory triggering mechanism refers *solely* to those regularly

---

[4] In awarding summary judgment to the defendant based on the statute of limitations, I need not address whether a loan servicer, such as Bayview, is subject to the WVCCPA. The parties' papers fail to take up this issue, although I note that the language of the WVCCPA appears to raise some question as to its applicability to non-creditors.

scheduled payments set forth in the loan agreement. Bayview, however, maintains that when it accelerated the loan on June 5, 2007, the loan became due immediately. Bayview asserts that this accelerated June 5 due date then became the "last scheduled payment" of the loan because no other payments were scheduled once the loan was accelerated. Under Bayview's interpretation, the one-year limitations period began to run on June 5, 2007. Because the plaintiffs filed this suit on March 18, 2009, Bayview maintains that the plaintiffs' WVCCPA claims are time-barred.

The court, of course, begins any question of statutory interpretation with the text of the statute. *See Harper v. Jackson Hewitt, Inc.*, No. 35295, slip op. at 18, 2010 WL 4723380, at *10 (W. Va. Nov. 23, 2010) (quoting *Appalachian Power Co. v. State Tax Dept of West Virginia*, 466 S.E.2d 424, 438 (W. Va. 1995)) ("This Court has long held that, in deciding the meaning of a statutory provision, '[w]e look first to the statute's language.'"). Nevertheless, statutes of limitations "are themselves expressions of important legislative policies," and "they should not be judicially abrogated without due consideration of those policies." *Province v. Province*, 473 S.E.2d 894, 903 (W. Va. 1996). Accordingly, statutes of limitation "should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, *so as to avoid an unjust or an absurd conclusion*." *State of Md., to Use of Burkhardt v. U.S.*, 165 F.2d 869, 872 (4th Cir. 1948) (emphasis added) (quoting *Lau Ow Bew v. U.S.*, 144 U.S. 47, 59 (1892)). "[T]he elimination of stale claims is the raison d'être of statutes of limitations." *Tidewater Fin. Co. v. Williams*, 498 F.3d 249, 261 (4th Cir. 2007) (internal citations omitted). Statutes of limitations "are statutes of repose; and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses,

10

fading memories, disappearance of documents, or otherwise." *United States v. Kubrick*, 444 U.S. 111, 117 (1979).

Although the plaintiffs have not specified precisely when they believe the statute of limitations will run on their claims, they appear to assert that the limitation period does not begin to run until the maturity date of the loan some thirty years after entering into the loan.[5] I disagree, because the terms of the WVCCPA, especially the phrase "of the agreement," support Bayview's reading of the statute. The WVCCPA defines an "agreement" as "the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance." W. Va. Code § 46A-1-102(2). This inclusive definition supports reading the phrase "of the agreement" in Section 46A-5-101(1) to encompass the entire bargain, including the acceleration clause in the loan agreement.

The WVCCPA also specifically addresses loan acceleration and protects consumers from abusive acceleration practices. *See* W. Va. Code § 46A-2-106. The Code provides that "[t]here shall be no acceleration of the maturity of all or part of any amount owing in such a consumer credit sale, consumer lease or consumer loan, except where nonperformance specified in the agreement as constituting default has occurred." *Id.* The West Virginia legislature clearly contemplated acceleration of loans as part of the regular course of business in consumer loan transactions. Thus, while the plaintiffs are correct that the WVCCPA "should be construed liberally as a remedial statute," *Dunlap v. Friedman's, Inc.*, 582 S.E.2d 841, 846 (W. Va. 2003) (internal citations omitted), this does not mean that the court should penalize creditors who accelerate a loan in

---

[5] January 1, 2030 is the maturity date of the original loan agreement. The loan modification agreement extended the maturity date to June 1, 2030.

accordance with both the terms of a loan agreement and West Virginia law.

Put simply under the loan agreement, Bayview could only accelerate the debt—and thereby make the last payment due immediately—when the plaintiffs were in default. This reading of the statute does not, as the plaintiffs assert, allow "the creditor's continued misconduct," (Pls.' Resp. in Opp. to Def.'s Mot. for Summ. J., at 19), but instead construes the statute of limitations to reach the only reasonable result. In agreeing to an acceleration clause, the plaintiffs were made aware that the "last" payment could become due immediately upon default. Under the plain terms of the WVCCPA, that event triggered the statute of limitations.

Under the plaintiffs' reading, an action against a creditor could be brought as many as fifty years after a violation of the WVCCPA occurred—even if the plaintiff paid the entire balance of the loan on the first payment—provided that the loan's maturity date, and thus the "last scheduled payment," was fifty years in the future. I sincerely doubt that the West Virginia legislature meant to allow plaintiffs a half-century in which to bring claims under the WVCCPA.[6] Additionally, the plaintiffs' reading leads to the absurd conclusion that a consumer plaintiff may bring a cause of action for statutory violations that occurred decades beforehand. In fact, under the plaintiffs' reading, a plaintiff could bring a cause of action within one year of the maturity date of a loan, even if the borrower paid off the entire loan in the second year of the agreement. Likewise, if the borrower defaulted in year three of a thirty-year loan, he could sit on his WVCCPA claims until some twenty-eight years later. This interpretation is particularly troubling in light of the fact that

---

[6] In addition, the plaintiffs were presumably aware that the "last scheduled date" could change after they entered into the original loan agreement. Indeed, the plaintiffs agreed to such a change when they signed the loan adjustment agreement, which pushed the maturity date on the loan forward six months.

modern home loans regularly have a maturity date that is ten, twenty, or even fifty, years in the future.

Accordingly, I **FIND** that the plaintiffs' claims under the WVCCPA are barred by the statute of limitations. This court **GRANTS** the defendant's Motion for Summary Judgment as to Counts One, Two, and Three of the plaintiffs' Complaint. The plaintiffs' Motion to Certify Class only seeks class certification with respect to these same counts. Accordingly, the court **DENIES** the Motion to Certify Class as moot.

### C. Plaintiff's Remaining Individual Claim - Breach of Contract

Count Four of the plaintiffs' Complaint states an individual cause of action against Bayview for breach of contract and breach of the implied covenant of good faith and fair dealing. It does not appear to the court that the plaintiffs have a plausible claim against Bayview for breach of contract. Although the record reflects several "agreements," including between Bayview and the plaintiffs, the plaintiffs have utterly failed to make any plausible allegation as to what "contract" could possibly form the basis for this claim. I need not delve further into the sufficiency of the plaintiffs' breach of contract claim, however, because I decline to exercise supplemental jurisdiction over this claim. Pursuant to 28 U.S.C. § 1367, district courts have the discretion to exercise supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 172-73 ("[T]he statute confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise."). The supplemental jurisdiction statute specifically provides that a district court "may decline to exercise supplemental

jurisdiction over a claim," if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 129 S. Ct. 1862, 1866 (2009).

In the present case, this court has original jurisdiction under CAFA over the plaintiffs' purported class claims. This court does not, however, have any independent basis for the plaintiffs' individual claim against Bayview. While complete diversity exists between the parties, all of the damages alleged in the plaintiffs' Complaint stem from statutory violations rather than any breach of contract by Bayview, and the plaintiffs have not alleged (or argued in response to the court's Show Cause Order) that their breach of contract claim independently satisfies the amount in controversy requirement. *See* 28 U.S.C. § 1332. Thus, supplemental jurisdiction provides the only possible basis for exercising jurisdiction over the plaintiffs' breach of contract claim. Given that I have granted summary judgment to Bayview on all of plaintiffs' claims over which the court had original jurisdiction, I decline to exercise supplemental jurisdiction over the plaintiffs' remaining state-law breach of contract claim. Accordingly, the court **DISMISSES** Count Four of the plaintiffs' Complaint, without prejudice.

## VI. Conclusion

For the reasons discussed above, the court **GRANTS** the defendant's Motion for Summary Judgment as to Counts One, Two, and Three of the plaintiffs' Complaint, and **AWARDS** judgment to the defendant as to these Counts. The court **DENIES** the Motion to Certify Class as moot. The court declines to exercise supplemental jurisdiction over Count Four of the plaintiffs' Complaint for

breach of contract and the implied covenant of good faith and fair dealing, and, accordingly, **DISMISSES** Count Four without prejudice.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The court **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER: January 18, 2011

Joseph R. Goodwin, Chief Judge